UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN BARAJAS,

       Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

       Defendant.

_____/

Case No. 3:20-cv-11219
District Judge Robert H. Cleland
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14) and AFFIRM THE COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner's decision.

**II.   REPORT**

      Plaintiff Carolyn Barajas brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for Disability Insurance (DI) benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 14), and the administrative record (ECF No. 10).

### A. Background and Administrative History

In her June 21, 2017 application for disability insurance benefits (DIB), Plaintiff alleges her disability began on July 6, 2010, at the age of 45. (ECF No. 10, PageID.197-200.) In her disability report, she lists as limiting her ability to work, verbatim:

(1) no grip or strength in right arm;

(2) numbness and tingling in right arm;

(3) chronic pain in right arm, with plates and screws;

(4) 2 falls in [sic] right arm, unsuccessful surgery in 2010;

(5) severe vericose veins,

(6) loses her balance due to concussion;

(7) very painful to walk;

(8) light sensitivity;

(9) irritable, angry and withdrawn;

(10) anxiety and depression.

(ECF No. 10, PageID.226.) Her application was denied on October 19, 2017. (ECF No. 10, PageID.122-138.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF No. 10, PageID.139-140.)  On November 28, 2018, ALJ Margaret O'Donnell held a hearing, at which Plaintiff and a vocational expert (VE), Mark Richards, testified.  (ECF No. 10, PageID.72-106.)  On March 14, 2019, ALJ O'Donnell issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 6, 2010, the alleged onset date, through December 31, 2015, her date last insured (DLI).  (ECF No. 10, PageID.47-66.)

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 10, PageID.194-196.)  However, on March 16, 2020, the Appeals Council denied Plaintiff's request for review.  (ECF No. 10, PageID.41-46.)  Thus, ALJ O'Donnell's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on May 18, 2020.  (ECF No. 1.)

  **B.** **Plaintiff's Medical History**

The administrative record contains a relatively short medical record of approximately 179 pages, which were available to the ALJ at the time of her March 14, 2019 decision.  (ECF No. 10, PageID.302-481 [Exhibits 1F-10F].)  These materials will be discussed in detail, as necessary, below.

  **C.** **The Administrative Decision**

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of July 6, 2010, through her DLI of December 31, 2015.  (ECF No. 10, PageID.52-53.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: "right upper extremity reflex sympathetic dystrophy (RSD) (aka complex regional pain syndrome (CRPS)), status post wrist fracture July 6, 2010 and status post carpal tunnel syndrome release November 2, 2010; head injury residuals; obesity; anxiety; and alcoholism and cannabis use[.]".  (ECF No. 10, PageID.53.)  At **Step 3**, the ALJ found that through the DLI, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 10, PageID.53-56.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that through the DLI, Plaintiff had the RFC:

> to perform light work . . . except no lifting more than ten pounds occasionally and frequently with the dominant right upper extremity and no more than occasional pushing and pulling with the dominant right upper extremity; no exposure to extreme cold or heat, or to excessive vibration, no use of torqueing tools in the dominant right upper extremity; must avoid concentrated exposure to unprotected heights; is limited to simple, routine, repetitive tasks.

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(ECF No. 10, PageID.56-60.)  At **Step 4**, the ALJ determined that through her DLI, Plaintiff was unable to perform any past relevant work.  (ECF No. 10, PageID.61.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that through her DLI, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as furniture rental clerk, usher, and investigator – dealer accounts.  (ECF No. 10, PageID.61-62.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from July 6, 2010, the alleged onset date, through December 31, 2015, the DLI.  (ECF No. 10, PageID.62.)

    **D.**    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff argues that the ALJ's RFC assessment is unsupported by substantial evidence and resulted in an erroneous hypothetical to the VE. (ECF No. 12, PageID.486, 493-506.) More specifically, Plaintiff asserts that: (1) the ALJ neglected to include limitations for reaching, handling, or fingering; (2) the ALJ failed to account for limitations associated with her head injury, including those addressing concentration, persistence, or pace; and (3) "the RFC does not accurately portray [her] severe mental impairment anxiety and fails to adequately incorporate the limitations stemming from her 'moderate' limitation in the area of concentration, persistence, and pace." (ECF No. 12, PageID.497-505.) The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the ALJ's RFC assessment. (ECF No. 14, PageID.513-514, 518-533.) For the reasons that follow, I agree with the Commissioner.

#### 1. RFC determination

The Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health*

7

*and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity."). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. § 404.1527(d)(2). Pursuant to Social Security Rule (SSR) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7. "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record

8

supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

### 2. The Court should find that substantial evidence supports the ALJ's physical RFC assessment

Plaintiff first asserts that despite her RSD/CRPS diagnosis and head injury, the ALJ neglected to include in her RFC reaching, handling, and fingering limitations, or limitations addressing "time off-task; performing at a consistent pace; ability to remember or carry out instructions, make simple work-related decisions, or sustain an ordinary routine (tardies/absences); and need for demonstration/redirection by a supervisor[.]" (ECF No. 12, PageID.497-503.) In so doing, she cites mainly to medical records containing her diagnoses and her own subjective statements regarding her symptoms. (ECF No. 12, PageID.497-503.) However, the ALJ considered the record as a whole by comparing Plaintiff's statements of her symptoms to the other evidence, incorporating into the RFC limitations associated with the above physical impairments, but concluded that while her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (ECF No. 10, PageID.57.)

9

With regard to Plaintiff's wrist, for example, the ALJ acknowledged her 2010 fall resulting in fracture and subsequent surgery, history of right upper RSD/CRPS, and 2010 right carpal tunnel release (ECF No. 10, PageID.57, 59-60), but noted that "in primary care provider records from September 2014 (10F/5), January 2015 (10F/8), April 2015 (10F/3) and December 2015 (4F/11), the record does not indicate that there were any further specific complaints, examinations, imaging, referrals, treatment, emergency room visits or hospital care for this problem prior to the date last insured." (ECF No. 10, PageID.57.)  And the ALJ discussed Plaintiff's August 2014 head injury from a slip and fall, but found that she was only diagnosed with a mild concussion without loss of consciousness, and that at an appointment with her primary care physician a month later, Plaintiff reported pain, difficulty understanding questions, and increased emotion, yet examination "found [her] to have grossly intact cranial nerves, normal facial sensation, normal coordination and motor strength of her upper and lower extremities, normal balance, intact speech, normal fluency, comprehension and repetition, intact insight and judgment, intact recent and remote memory, normal affect and tearful mood." (ECF No. 10, PageID.57-58 (citing ECF No. 10, PageID.455-456, 463-464).)  Further, the ALJ stated:

> In October 2014, the claimant was evaluated by neurologist Devinderjit Singh Bhangu, M.D[.], at the request of her primary physician.  The claimant reported mild to moderate constant headaches almost on a daily basis, and difficulty with memory.  Dr.

10

Case 3:20-cv-11219-RHC-APP   ECF No. 15, PageID.545   Filed 08/10/21   Page 11 of 19

> Bhangu's findings pursuant to a neurological examination were entirely normal, with the claimant following commands and exhibiting good comprehension, judgment, and insight, no difficulty in naming or repetition, normal motor examination, and sensory intact (10F/23). Dr. Bhangu reviewed an MRI of the claimant's brain (5F/3), which he indicated showed no evidence of ischemia, hemorrhage, or any contusions. Although it showed minimal parenchymal volume loss of the brain with mild prominence of extra axial CFS spaces, he described the MRI to be unremarkable. Dr. Bhangu assessed the claimant with post-concussion syndrome, and recommended an EEG and follow-up in three months (10F/24).
>
> An EEG performed in November 2014 was normal, without any focal or generalized epileptiform activity (5F/25). The record does not indicate that the claimant returned to Dr. Bhangu for further treatment. Additionally, the record reflects no specific complaints or treatment regarding the claimant's head injury until a year later in November 2015, when she returned to her primary physician reporting headaches and memory loss, but no examination, testing, or treatment changes were referenced then (10F/11).

(ECF No. 10, PageID.58.)

The ALJ also considered the State agency medical expert's[2] report finding Plaintiff's carpal tunnel syndrome to be a severe impairment but declining to render an opinion regarding any associated limitations due to insufficient evidence (ECF No. 10, PageID.59 (citing ECF No. 10, PageID.108-117)), and found unpersuasive 2017 and 2018 medical source statements from Plaintiff's treatment

---

[2] The ALJ mistakenly attributed the physical determinations in the report to the State agency psychologist as opposed to Dr. Thomas Chiambretti.

11

provider, Dr. Rommel Aquino, proposing specific functional limitations (ECF No. 10, PageID.59-60 (citing ECF No. 10, PageID.244-246, 435-438)).

Plaintiff references only her diagnoses and subjective statements regarding her symptoms to opine that the ALJ should have included additional limitations in the RFC which would have precluded light work (*see* ECF No. 12, PageID.497-504 (citing ECF No. 10, PageID.86-87, 302, 376, 453, 455-456, 461, 473)), rather than contest the ALJ's interpretation of the medical records cited. She accordingly gives me no reason to doubt the accuracy of the ALJ's references to the record, or her decision to discount Dr. Aquino's opinions,[3] effectively waiving any such argument, *see McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). But Plaintiff bears the burden of proving entitlement to a more restrictive RFC, *Jordan*, 548 F.3d at 423; *Walters*, 127 F.3d at 529, and diagnoses alone say nothing of the severity of a claimant's symptoms or any resulting functional limitations, *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere

---

[3] Relevant to Plaintiff's appeal, the ALJ discounted the reaching/handling/fingering limitations proposed by Dr. Aquino based on internal inconsistencies, stating, "Although Dr. Aquino checked 'yes' that the claimant had significant limitations with reaching, handling or fingering, he indicated that the claimant could use both upper extremities one hundred percent of the time for reaching, fine manipulation, and to grasp, turn and twist objects." (ECF No. 10, PageID.60.) The ALJ also noted, but discounted, Dr. Aquino's opinions regarding time off task. (ECF No. 10, PageID.59-60.)

12

diagnosis of it.") (citing *Higgs. v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Nor is an ALJ required to blindly accept a claimant's testimony regarding his symptoms. *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). And Plaintiff offers no citation to the record linking her physical diagnoses or symptoms to specific functional limitations. Indeed, Plaintiff's assertions that the ALJ erred by failing to assess additional limitations are purely speculative. She states, for example:

> [W]ithin her RFC finding the ALJ does not properly account for Plaintiff's severe physical impairments "head injury residuals" with associated memory impairment, vision loss, migraines/headaches and RSD/CRPS with associated pain symptoms. Limitations which *could* account for these impairments and associated symptoms would address: time off-task; performing at a consistent pace; ability to remember or carry out instructions, make simple work-related decisions, or sustain an ordinary routine (tardies/absences); and need for demonstration/redirection by a supervisor, none of which are in the RFC.

(ECF No. 12, PageID.501) (emphasis in original.) Further:

> A person suffering from daily headaches, vision changes, and who has problems with remembering things, is misplacing things, and cannot understand questions from her treating physician *would likely* have difficulty maintaining the concentration, persistence or pace necessary for competitive work.

(ECF No. 12, PageID.502) (emphasis added.)

Accordingly, as Plaintiff simply cites to evidence the ALJ considered, but discounted, and fails to meet her burden of establishing entitlement to a more restrictive RFC, the Court should deny her request for reversal or remand on that

13

basis. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (not in the province of the Court to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ"). Should the Court agree, Plaintiff's argument that the ALJ posed an incorrect physical hypothetical to the VE (*see* ECF No. 12, PageID.495) necessarily fails, and it need not address Plaintiff's assertion regarding her age and sedentary work (*see* ECF No. 12, PageID.498-499).

### 3. The Court should find no error with the ALJ's mental RFC assessment

As part of Step 3 of the sequential process, the ALJ stated, "With regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation." (ECF No. 10, PageID.55.) Plaintiff asserts on appeal that a finding of moderate limitation in concentration, persistence, and pace (CPP) necessitates an RFC (and hypothetical question to the VE on which it is based) more restrictive than the limitation to "simple, routine, repetitive tasks" imposed here (ECF No. 10, PageID.56). (ECF No. 12, PageID.499-500, 504.) In so doing, she cites *Edwards v. Barnhart*, 383 F.Supp.2d 920 (E.D. Mich. 2005) (Friedman, J. *adopting report and recommendation of* Pepe, M.J.), and states, "At Step Two, even though ALJ O'Donnell finds that the Plaintiff has moderate difficulties with regard to concentration, persistence, and pace, she neglects to include a limitation in her

14

RFC to accommodate for being off-task (ECF No. 10, PageID.56)." (ECF No. 12, PageID.504.)

In *Edwards*, 383 F.Supp.2d at 929-930, the Court found that by limiting the plaintiff to jobs entailing no more than simple, routine, unskilled work, the ALJ failed to adequately incorporate the plaintiff's moderate CPP limitations into the hypothetical question posed to the VE or her RFC. But there is no bright-line rule requiring remand in such situations. "Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Taylor v. Comm'r of Soc. Sec.*, No. 10-cv-12519, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011), *report and recommendation adopted by* 2011 WL 2682892 (E.D. Mich. July 11, 2011). See also *Barnes v. Comm'r of Soc. Sec.*, No. 12-CV-15256, 2013 WL 6328835, at *14 (E.D. Mich. Dec. 5, 2013) (Friedman, J. *adopting report and recommendation by* Michelson, M.J.) ("Although some cases have suggested that an RFC limiting a claimant to 'unskilled' or 'simple, routine' work is not sufficient to account for 'moderate' limitations in CPP because the claimant may have difficulty staying on task or keeping pace even when performing unskilled or simple, routine work, other decisions have recognized that limiting a claimant to unskilled or simple, routine work is sufficient because at least some claimants with those limitations can stay on task and keep pace when the work is simple."); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th

15

Cir. 2016) ("Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace."). "The ultimate question is whether substantial evidence supports the ALJ's choice of limitations in the RFC assessment and corresponding hypothetical[.]" *Barnes*, 2013 WL 6328835, at *14. *See also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) ("Here, the limitation to simple, routine, and repetitive tasks adequately conveys Smith-Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods.' Unlike in *Ealy* [*v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010)], Dr. Kriauciunas did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks.").

Again, rather than cite to any specific functional limitations associated with CPP identified in the record, Plaintiff cites to her diagnoses for depression and anxiety, her testimony regarding associated symptoms, and observations that she was in distress, tearful, or anxious. (ECF No. 12, PageID.499-500 (citing ECF No. 10, PageID.81-83, 99, 321, 345, 356, 455-456).) But for the same reasons provided, such evidence is insufficient to sustain her burden of proving the need for a more restrictive hypothetical question/RFC. Furthermore, the ALJ

16

considered but questioned the symptoms Plaintiff alleged with regard to her anxiety, stating:

> Regarding the claimant's anxiety, prior to the date last insured, the claimant was did not [sic] seek treatment or make any persistent, ongoing, relevant complaints (3F; 4F). Although she was referred for a psychological consult for marriage counseling and stress management by her primary physician in September 2014, there was no evidence indicating any follow-up with that referral (10F/6). Dr. Broder prescribed Amitriptyline in July 2017, but the record is unclear whether the prescription was related to mental or physical issues (9F/8). The record indicates that although the claimant sometimes expressed complaints of depression and/or anxiety (9F/2, 4, 7; 10F/6), psychiatric examinations were largely normal (1F/1, 4F/1, 4, 15; 7F/4, 7, 10, 14; 10F/6, 9).

(ECF No. 10, PageID.58-59.) And Plaintiff has given me no reason to doubt the accuracy of the ALJ's references to the record, although a cursory review reveals no issues.

Accordingly, the Court should find no error with the ALJ's mental RFC assessment or related hypothetical to the VE.

### F. Conclusion

Plaintiff has the burden of proof on statements of error. *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence. For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

17

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 10, 2021

                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE